1  Bradley W. Petersen (#019943)
   bpetersen@swlaw.com
2  Amanda C. Sheridan (#027360)
   asheridan@swlaw.com
3  SNELL & WILMER L.L.P.
   One Arizona Center
4  400 E. Van Buren
   Phoenix, AZ  85004-2202
5  Telephone: (602) 382-6000
   Facsimile:  (602) 382-6070
6  Attorneys for Defendants
      ADESA Phoenix, LLC and ADESA, Inc.
7

8              IN THE UNITED STATES DISTRICT COURT

9               FOR THE DISTRICT OF ARIZONA

10 Allen David Taylor and Jeanette Taylor,
   husband and wife,                              No.
11
                        Plaintiffs,               **NOTICE OF REMOVAL OF**
12                                                **ACTION UNDER 28 U.S.C. § 1441(b)**
                                                  **(DIVERSITY)**
13 v.

14 ADESA Phoenix, LLC, a foreign LLC;
   ADESA, Inc., a Delaware corporation;
15 KAR Auction Services, Inc., a Delaware
   corporation; Abc Corporations I-X; Xyz
16 Partnerships I-X; John Does I-X; Jane
   Does I-X,
17
                        Defendants.
18

19      **PLEASE  TAKE  NOTICE**  that  pursuant  to  28  U.S.C.  §§  1441  and  1446,

20 Defendants ADESA Phoenix, LLC and ADESA, Inc. remove to this Court the state court

21 action described below:

22      1.      On February 25, 2011, an action was commenced in the Superior Court of

23 the  State  of  Arizona,  in  and  for  the  County  of  Maricopa,  entitled:  *Taylor v. Adesa*

24 *Phoenix, LLC, a foreign LLC, et al.,*  No. CV2011-004271.  A true and correct copy of the

25 Complaint is attached as Exhibit 1.

26      2.      Plaintiff also filed a Certificate of Non-Arbitration.  A true and correct copy

27 is attached as Exhibit 2.

28

1    3.    ADESA Phoenix, LLC was served a copy of the Complaint and Summons

2    on February 28, 2011.  A copy of the Summons is attached as Exhibit 3.

3    4.    ADESA, Inc. was served a copy of the Complaint and Summons on

4    February 28, 2011.  A copy of the Summons is attached as Exhibit 4.

5    5.    On March 2, 2011, Plaintiff filed the Affidavit of Service of Process for

6    ADESA Phoenix.  A copy of the Affidavit is attached as Exhibit 5.

7    6.    On March 2, 2011, Plaintiff filed the Affidavit of Service of Process for

8    ADESA, Inc.  A copy of the Affidavit is attached as Exhibit 6.

9    7.    On March 16, 2011, Plaintiff filed the Affidavit of Service of Process for

10   KAR Auction Services, Inc.   A copy of the Affidavit is attached as Exhibit 7. KAR

11   Auction Services, Inc. was voluntarily dismissed.  A copy of the Voluntary Dismissal is

12   attached as Exhibit 8.

13   8.    Removal in this matter is timely under 28 U.S.C. § 1446(b), because it is

14   being filed within thirty (30) days after receipt of the Complaint.

15   9.    Defendant ADESA, Inc. is a Delaware corporation with its principal place

16   of business in Indiana.  When diversity is an issue, corporations, Like ADESA, Inc., are

17   considered to be a citizen of the state where it is incorporated and the state that is its

18   principle place of business.  *See Industrial Tectonics v. Aero Alloy*, 912 F.2d 1090, 1092

19   (9th Cir. 1990).  For diversity purposes ADESA, Inc. may be considered a citizen of

20   Delaware or Indiana, but not Arizona.

21   10.   ADESA Phoenix, LLC is a limited liability company whose sole member is

22   ADESA New Jersey.  ADESA New Jersey is a limited liability company whose sole

23   member is ADESA, Inc., a Delaware corporation with its principal place of business in

24   Indiana.  When diversity is an issue, limited liability companies, like ADESA Phoenix,

25   LLC, are to be treated like other unincorporated enterprises such that they are considered

26   to have the same citizenship of their members, potentially including their member's

27   members.  *See Carden v. Arkoma Associates*, 494 U.S. 185, 195 (1990); *Johnson v.*

28   *Columbia Properties Anchorage*, 437 F.3d 894, 899 (9th Cir. 2006).   For diversity

Snell & Wilmer
—— L.L.P. ——
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

- 2 -

1   purposes ADESA Phoenix, LLC may be considered a citizen of Delaware or Indiana, but
2   not Arizona.

3       11.    Plaintiffs are residents and citizens of Arizona.  *See* Compl., Ex. 1.

4       12.    This is a civil action of which this Court has jurisdiction pursuant to 28
5   U.S.C. § 1332, and is one which may be removed to this Court by Defendants pursuant to
6   the provisions of 28 U.S.C. § 1441(b) in that it is a civil action between citizens of
7   different states and the matter in controversy exceeds the sum of $75,000.00, exclusive of
8   interest and costs.

9       13.    While Plaintiffs' Complaint only alleges "an excess of $10,000" in
10  damages, Plaintiffs previously made a demand ("the Settlement Letter") upon the
11  Defendants in the amount of $450,000.  Attached as Exhibit 9.  The Ninth Circuit has held
12  that "[a] settlement letter is relevant evidence of the amount in controversy. . ."  *Cohn v.*
13  *Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002).   While Defendants dispute that
14  Plaintiffs are entitled to damages in excess of $75,000, even if successful on their claims,
15  the Settlement Letter is sufficient to give Defendants cause to remove.

16      14.    Defendants filed a Notice of Removal in Arizona Superior Court, County of
17  Maricopa, a true and correct copy of which is attached as Exhibit 10.

18      WHEREFORE, Defendants request that this Court assume full jurisdiction over the
19  cause herein as provided by law.

20      DATED this 28th day of March, 2011.

21                          SNELL & WILMER L.L.P.
22

23              By    s/ Amanda C. Sheridan
                      Bradley W. Petersen
24                    Amanda C. Sheridan
                      One Arizona Center
25                    400 E. Van Buren
                      Phoenix, AZ  85004-2202
26                    Attorneys for Defendants
                         ADESA Phoenix, LLC and ADESA, Inc
27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2011, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Mark W. Drutz
Sharon Sargent-Flack
Musgrove, Drutz & Kack, P.C.
1135 Iron Spring Road
P.O. Box 2720
Prescott, AZ 86302


/s/ Veronnica Dolan

# EXHIBIT 1

1 | Mark W. Drutz, #006772
2 | Sharon Sargent-Flack, #021590
  | **MUSGROVE, DRUTZ & KACK, P.C.**
3 | 1135 Iron Springs Road
  | Post Office Box 2720
4 | Prescott, AZ  86302
5 | Phone: (928) 445-5935
  | Fax:    (928) 445-5980
6 | mdkpc@cableone.net
7 | Attorneys for Plaintiffs

**COPY**

FEB 2 5 2011

MICHAEL K. JEANES, CLERK
K. CROCKETT
DEPUTY CLERK

8

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

9

## IN AND FOR THE COUNTY OF MARICOPA

10

| | |
|---|---|
| 11 ALLEN DAVID TAYLOR and JEANETTE | Case No. CV  CV2011-004271 |
| 12 TAYLOR, husband and wife, | |
| 13          Plaintiffs, | **COMPLAINT** |
| 14 v. | (Tort-Motor Vehicle) |
| 15 ADESA PHOENIX, LLC, a foreign LLC; | |
| 16 ADESA, INC., a Delaware corporation; KAR | |
| AUCTION SERVICES, INC., a Delaware | |
| 17 corporation; ABC CORPORATIONS I-X; | |
| XYZ PARTNERSHIPS I-X; JOHN DOES I- | |
| 18 X; JANE DOES I-X, | |
| 19          Defendants. | |
| 20 | |

21       Plaintiffs ALLEN DAVID TAYLOR and JEANETTE TAYLOR, husband and wife by

22

23 and through their attorneys, MUSGROVE, DRUTZ & KACK, P.C., for their Complaint against

24 Defendants, allege as follows:

25       1.    This Court has jurisdiction because the amount in controversy exceeds

26 $10,000.00.  Venue is proper because the acts, events and omissions described herein occurred in

27

28 the County of Maricopa, State of Arizona.

2.      Plaintiffs ALLEN DAVID TAYLOR and JEANETTE TAYLOR are and were at all material times lawfully married and residents of the County of Maricopa, State of Arizona.

3.      Upon information and belief, at all times material to the allegations herein, Defendant ADESA PHOENIX, LLC, a foreign limited liability company, was authorized to do and/or doing business in Maricopa County, Arizona.

4.      Upon information and belief, at all times material to the allegations herein, Defendant ADESA, INC., a Delaware corporation, was authorized to do and/or doing business in Maricopa County, Arizona.

5.      Upon information and belief, at all times material to the allegations herein, Defendant ADESA, INC. was owned by KAR AUCTION SERVICES, INC., a Delaware corporation.

6.      Upon information and belief, at all material times, including the time of the subject accident on December 16, 2009, the subject vehicle which was involved in the accident out of which this action arises, was owned by Defendants.

7.      Upon further information and belief, the car auction which Plaintiff ALLEN DAVID TAYLOR was attending on December 16, 2009 was promoted, sponsored and/or staged by Defendants.

8.      Upon further information and belief, at the time of the accident in question on December 16, 2009, an employee of Defendants, whose identity is presently unknown, was acting in the course and scope of his/her employment as an employee driver of Defendants, and was entrusted with and operating the subject vehicle with the full and unqualified permission and consent of Defendants.  In addition, upon information and belief, because the employee was

2

operating the subject vehicle during the course and scope of his/her employment and was performing a service in furtherance of Defendants' business, Defendants are vicariously liable for any torts committed by their employee during such time and for any resulting harm caused to others such as Plaintiffs under the doctrine of *respondeat superior.*

9.     Defendants John Does I-X, Jane Does I-X, ABC Corporations I-X and XYZ Partnerships I-X are fictitious names of persons, corporations, partnerships and/or business entities  whose true names are not known at this time, and Plaintiffs may seek leave of the Court to reflect such true names upon discovery of same.  Defendants John Does I-X and Jane Does I-X, upon information and belief, are residents of the State of Arizona, who, if married, committed the acts and/or incurred obligations hereinafter described on behalf of their respective martial communities which are, therefore, responsible for same.  Defendants ABC Corporations I-X and XYZ Partnerships I-X are corporations,  partnerships, and/or other business entities authorized to do and are doing business in the State of Arizona.  At all times said fictitious defendants, and each of them, were agents, servants and/or employees of the remaining co-defendants, and each was, at all times material hereto, acting within the course and scope of such agency, service and/or employment.

10.     On December 16, 2009, Defendants' employee negligently drove and operated the subject vehicle so as to cause it to collide into/and with Plaintiff ALLEN DAVID TAYLOR, causing him to sustain bodily injuries and damages.  The collision (hereafter "the subject accident") occurred in the crosswalk in front of Defendants' auction building located at 400 North Beck Avenue, Chandler, Arizona, inside the City of Chandler, County of Maricopa, State of Arizona.

11.     Immediately before and at the time of the above-described accident, Defendants' employee owed a duty to Plaintiffs to exercise reasonable care in operating the subject vehicle and he/she breached that duty by operating the subject vehicle as he/she did at the place and time in question.

12.     The acts and omissions of Defendants' employee in causing the subject accident, and particularly in violating A.R.S. §§ 28-792 and 28-794, constitutes negligence *per se.* Defendants' employee failed to yield the right-of-way to Plaintiff ALLEN DAVID TAYLOR as he was crossing the roadway in a crosswalk.

13.     Plaintiff ALLEN DAVID TAYLOR was free of any comparative fault or negligence with respect to the subject accident or his accident-related injuries and damages.

14.     As a direct and proximate result of Defendants' employee's negligence in causing the subject accident, Plaintiff ALLEN DAVID TAYLOR suffered physical injuries, pain and suffering, emotional upset/shock, discomfort, annoyance, inconvenience, anguish, anxiety, loss of enjoyment of life's pleasures and activities, and has incurred in excess of $12,000.00 in medical expenses.

15.     In addition, as a further direct and proximate result of Defendants' negligence in causing the accident, Plaintiff ALLEN DAVID TAYLOR will sustain prospective damages for future pain and suffering; incur reasonable and necessary expenses in receiving medical treatment, invasive surgery, therapy or rehabilitation in an amount which will be established at trial; and incur "hedonic" damages due to his loss of enjoyment of life's activities in the future.

16.     Furthermore, as a direct and proximate result of Defendants' employee's negligence, Plaintiff JEANETTE TAYLOR has sustained a loss of consortium with her husband

4

Plaintiff ALLEN DAVID TAYLOR, due to Mr. Taylor's accident-related injuries and damages and the adverse affect/impact that his injures and condition have had on their marital relationship.

17. The exact amount of Plaintiffs' damages are not yet known but will exceed the minimum jurisdictional limits of this Court.

WHEREFORE, Plaintiffs request judgment against Defendants, and each of them, as follows:

a. For an award of compensatory damages in an amount that is just and reasonable, which amount will be established at trial;

b. For Plaintiffs' costs incurred herein; and

c. For such other and further relief as the Court deems just and proper.

DATED this 24th day of February, 2011.

MUSGROVE, DRUTZ & KACK, P.C.

By _____
Mark W. Drutz
Sharon Sargent-Flack
Attorneys for Plaintiffs

5

# EXHIBIT 2

1  Mark W. Drutz, #006772
2  Sharon Sargent-Flack, #021590
   **MUSGROVE, DRUTZ & KACK, P.C.**
3  1135 Iron Springs Road
   Post Office Box 2720
4  Prescott, AZ  86302
5  Phone: (928) 445-5935
   Fax:   (928) 445-5980
6  mdkpc@cableone.net
7  Attorneys for Plaintiffs



**COPY**

FEB 2 5 2011



MICHAEL K. JEANES, CLERK
K. CROCKETT
DEPUTY CLERK

8              **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

9                  **IN AND FOR THE COUNTY OF MARICOPA**

10

11  ALLEN DAVID TAYLOR and JEANETTE
    TAYLOR, husband and wife,                      Case No. CV   CV2011-004271
12
                          Plaintiffs,              **CERTIFICATE OF NO COMPULSORY**
13                                                              **ARBITRATION**
14  v.

15  ADESA PHOENIX, LLC, a foreign LLC;
    ADESA, INC., a Delaware corporation; KAR
16  AUCTION SERVICES, INC., a Delaware
    corporation; ABC CORPORATIONS I-X;
17  XYZ PARTNERSHIPS I-X; JOHN DOES I-
    X; JANE DOES I-X,
18
19                        Defendants.
20

21          The undersigned certifies that he knows the dollar limits and any other limitations set
22
23  forth by the local rules of practice for the Maricopa County Superior Court, and further certifies
24  that this case is **not** subject to compulsory arbitration, as provided by Rules 72 through 76 of the
25  Arizona Rules of Civil Procedure.
26

27
28  ///

DATED this 24th day of February, 2011.

MUSGROVE, DRUTZ & KACK, P.C.

By ____________________
Mark W. Drutz
Sharon Sargent-Flack
Attorneys for Plaintiffs

# EXHIBIT 3

1    Mark W. Drutz, #006772
2    Sharon Sargent-Flack, #021590
     **MUSGROVE, DRUTZ & KACK, P.C.**
3    1135 Iron Springs Road
     Post Office Box 2720
4    Prescott, AZ   86302
5    Phone: (928) 445-5935
     Fax:    (928) 445-5980
6    mdkpc@cableone.net
7    Attorneys for Plaintiffs

8           **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

9               **IN AND FOR THE COUNTY OF MARICOPA**

10

11    ALLEN DAVID TAYLOR and JEANETTE      Case No. CV **CV2011-004271**
     TAYLOR, husband and wife,

12

13             Plaintiffs,            **SUMMONS**

14    v.

15    ADESA PHOENIX, LLC, a foreign LLC;       IF YOU WANT THE ADVICE OF A
     ADESA, INC., a Delaware corporation; KAR     LAWYER, YOU MAY WISH TO CONTACT
16    AUCTION SERVICES, INC., a Delaware      THE LAWYER REFERRAL SERVICE AT
     corporation; ABC CORPORATIONS I-X;        602-257-4434 OR ON-LINE AT
17    XYZ PARTNERSHIPS I-X; JOHN DOES I-     WWW.LAWYERFINDERS.ORG. LRS IS
     X; JANE DOES I-X,                     SPONSORED BY THE MARICOPA
18                                COUNTY BAR ASSOCIATION

19             Defendants.

20

21    **THE STATE OF ARIZONA TO:  ADESA Phoenix, LLC**
22                           **c/o Corporation Service Company**
23                           **2338 West Royal Palm Road, Suite J**
                            **Phoenix, AZ 85021**
24

25       A Complaint has been filed against you.

26

27

28

1        If you do not want a Judgment taken against you for the relief demanded in the

2   accompanying Complaint, you must file an Answer in writing in the Superior Court.  A copy of

3
    the Answer must also be mailed to the Plaintiffs' attorneys:
4

5           Mark W. Drutz, Esq.
            Sharon Sargent-Flack, Esq.
6           MUSGROVE, DRUTZ & KACK, P.C.
            1135 Iron Springs Road
7           P.O. Box 2720
            Prescott, Arizona  86302-2720
8

9        The Answer must be filed within **TWENTY DAYS**, exclusive of the day of service, if

10  served within the State of Arizona, or within **THIRTY DAYS**, exclusive of the day of service, if

11
    served outside the State of Arizona.
12

13       **THIS IS A LEGAL DOCUMENT.  IF YOU DO NOT UNDERSTAND ITS**

14  **CONSEQUENCES, YOU SHOULD SEEK THE ADVICE OF AN ATTORNEY.**

15       **REQUESTS FOR REASONABLE ACCOMMODATION FOR PERSONS WITH**

16
    **DISABILITIES MUST BE MADE TO THE COURT BY PARTIES AT LEAST THREE**
17
    **WORKING DAYS IN ADVANCE OF A SCHEDULED COURT PROCEEDING.**
18

19       **GIVEN** under my hand and the Seal of the Superior Court in and for the County of

20  Maricopa this ___ day of _____, 2011.

21
                          **MICHAEL K. JEANS,**
22                        **CLERK OF THE SUPERIOR COURT**

23                                COPY

24                  By _____

25                     Deputy Clerk      FEB 2 5 2011

26                              MICHAEL K. JEANES, CLERK
                                    K. CROCKETT
27                                  DEPUTY CLERK

28

# EXHIBIT 4

MICHAEL K. JEANES, CLERK
RECEIVED CCC #5
DOCUMENT DEPOSITORY

11 MAR -2 PM 3: 45

FILED
BY *L Hack* DEP.

1  Mark W. Drutz, #006772
2  Sharon Sargent-Flack, #021590
   **MUSGROVE, DRUTZ & KACK, P.C.**
3  1135 Iron Springs Road
   Post Office Box 2720
4  Prescott, AZ  86302
5  Phone: (928) 445-5935
   Fax:   (928) 445-5980
6  mdkpc@cableone.net
7  Attorneys for Plaintiffs

ORIGINAL

8        **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

9           **IN AND FOR THE COUNTY OF MARICOPA**

10

11  ALLEN DAVID TAYLOR and JEANETTE
    TAYLOR, husband and wife,                 Case No. CV  **CV2011-004271**
12
             Plaintiffs,                       **SUMMONS**
13
14  v.

15  ADESA PHOENIX, LLC, a foreign LLC;        IF YOU WANT THE ADVICE OF A
    ADESA, INC., a Delaware corporation; KAR  LAWYER, YOU MAY WISH TO CONTACT
16  AUCTION SERVICES, INC., a Delaware        THE LAWYER REFERRAL SERVICE AT
    corporation; ABC CORPORATIONS I-X;        602-257-4434 OR ON-LINE AT
17  XYZ PARTNERSHIPS I-X; JOHN DOES I-        WWW.LAWYERFINDERS.ORG. LRS IS
    X; JANE DOES I-X,                         SPONSORED BY THE MARICOPA
18                                            COUNTY BAR ASSOCIATION
19
             Defendants.
20

21  THE STATE OF ARIZONA TO:   ADESA, Inc.
22                             c/o Corporation Service Company
23                             2338 West Royal Palm Road, Suite J
                               Phoenix. AZ 85021
24

25        A Complaint has been filed against you.

26

27

28

1    If you do not want a Judgment taken against you for the relief demanded in the

2    accompanying Complaint, you must file an Answer in writing in the Superior Court.  A copy of

3    the Answer must also be mailed to the Plaintiffs' attorneys:

4

5              Mark W. Drutz, Esq.
               Sharon Sargent-Flack, Esq.
6              MUSGROVE, DRUTZ & KACK, P.C.
               1135 Iron Springs Road
7              P.O. Box 2720
               Prescott, Arizona  86302-2720
8

9        The Answer must be filed within **TWENTY DAYS**, exclusive of the day of service, if

10   served within the State of Arizona, or within **THIRTY DAYS**, exclusive of the day of service, if

11   served outside the State of Arizona.

12

13       **THIS IS A LEGAL DOCUMENT.  IF YOU DO NOT UNDERSTAND ITS**

14   **CONSEQUENCES, YOU SHOULD SEEK THE ADVICE OF AN ATTORNEY.**

15       **REQUESTS FOR REASONABLE ACCOMMODATION FOR PERSONS WITH**

16   **DISABILITIES MUST BE MADE TO THE COURT BY PARTIES AT LEAST THREE**

17

18   **WORKING DAYS IN ADVANCE OF A SCHEDULED COURT PROCEEDING.**

19       **GIVEN** under my hand and the Seal of the Superior Court in and for the County of

20   Maricopa this ___ day of _____ **FEB 2 5 2011** ____, 2011.

21

22                              MICHAEL K. JEANS,
                                CLERK OF THE SUPERIOR COURT
23

24                         By _____
25                              Deputy Clerk
26
                         MICHAEL K. JEANES, CLERK
27

28

                                    2

# EXHIBIT 5

# Liddy Legal Support Services

PO Box 2007, Phoenix, AZ 85001
63 E. Pennington St., #102, Tucson, AZ 85702
Phoenix 602-297-0676 | Tucson 520-628-2824

MICHAEL K. JEANES, CLERK
RECEIVED CCC #6
DOCUMENT DEPOSITORY

**11 MAR -2  PM 3: 47**

**FILED**
BY _____ *L Hack* _____ DEP.

Client File # Taylor v. ADESA
Account   # 0167
Invoice   # 143490
Liddy     # 46210-1

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

ALLEN DAVID TAYLOR, et al.,

                               Plaintiff(s),

vs

ADESA PHOENIX, LLC, et al.,

                               Defendant(s).

**CERTIFICATE OF SERVICE**
**BY PRIVATE PROCESS SERVER**
**Case No. CV2011-004271**

**ORIGINAL**

**ENTITY/PERSON TO BE SERVED:** ADESA Phoenix, LLC c/o Corporation Service Company, Statutory Agent

**PLACE OF SERVICE:**         2338 W. Royal Palm Road, Suite J, Phoenix, AZ 85021

**DATE OF SERVICE:** On the   28th   day of   February   , 2011   at   10:40   AM    County  Maricopa

☐ PERSONAL SERVICE   ☒ Left a copy with a person authorized to accept service.   ☐ At this usual place of abode, I left a copy with a person of suitable age and discretion residing therein.

**Name of Person Served and Relationship/Title**   Ashley McAuliffe, Service of Process Coordinator, appointed and authorized to receive and accept service in the State of Arizona by Corporation Service Company.

on   02/25/2011   we received the following documents for service:

Summons, Complaint and Certificate of  No Compulsory Arbitration

Received from MUSGROVE, DRUTZ & KACK, P.C., ( Mark W. Drutz #006772 )

PROCESS SERVER:   Joseph T. Basso #5027

The undersigned states: That I am a registered private process server in the county of Maricopa and am an Officer of the Court.

SIGNATURE OF PROCESS SERVER: _____   Date: 3/1/2011

| Item | Amount |
|---|---|
| Service of Process | $16.00 |
| Mileage | $27.50 |
| Doc. Prep Fee | $10.00 |

**Tax ID#** 90-0533870
I declare under penalty of perjury that the foregoing is true and correct and was executed on this date.

          Total      $53.50

# EXHIBIT 6

# Liddy Legal Support Services

PO Box 2007, Phoenix, AZ 85001
63 E. Pennington St., #102, Tucson, AZ 85702
Phoenix 602-297-0676 | Tucson 520-628-2824



MICHAEL K. JEANES, CLERK
RECEIVED CCC #5
DOCUMENT REPOSITORY

**11 MAR -2 PM 3: 45**

Client File # Taylor v. ADESA
Account # 0167
Invoice # 143530
Liddy # 46210-2

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

ALLEN DAVID TAYLOR, et al.,

                        Plaintiff(s),

vs

ADESA PHOENIX, LLC, et al.,

                        Defendant(s).

**CERTIFICATE OF SERVICE
BY PRIVATE PROCESS SERVER
Case No. CV2011-004271**

**ENTITY/PERSON TO BE SERVED:** ADESA, Inc. c/o Corporation Service Company, Statutory Agent

**PLACE OF SERVICE:**      2338 W. Royal Palm Road, Suite J, Phoenix, AZ 85021

**DATE OF SERVICE:** On the   28th   day of   February  , 2011 at   10:40   AM    County  Maricopa

| | | | |
|---|---|---|---|
| ☐ PERSONAL SERVICE | ☒ Left a copy with a person authorized to accept service. | ☐ | At this usual place of abode, I left a copy with a person of suitable age and discretion residing therein. |

**Name of Person Served and Relationship/Title**    Ashley McAuliffe, Service of Process Coordinator, appointed and authorized to

                                        receive and accept service in the State of Arizona by Corporation Service Company.

on    02/25/2011     we received the following documents for service:

Summons, Complaint and Certificate of No Compulsory Arbitration

Received from MUSGROVE, DRUTZ & KACK, P.C., ( Mark W. Drutz #006772 )

PROCESS SERVER:   Joseph T. Basso #5027

The undersigned states: That I am a registered private process server in the county of Maricopa and am an Officer of the Court.

SIGNATURE OF PROCESS SERVER: _____   Date: 3/1/2011

| Item | Amount |
|---|---|
| Service of Process | $16.00 |
| Doc. Prep Fee | $10.00 |

**Tax ID#** 90-0533870
I declare under penalty of perjury that the foregoing is true
and correct and was executed on this date.

     Total     $26.00

# EXHIBIT 7

Mark W. Drutz, #006772
Sharon Sargent-Flack, #021590
**MUSGROVE, DRUTZ & KACK, P.C.**
1135 Iron Springs Road
Post Office Box 2720
Prescott, AZ  86302
Phone: (928) 445-5935
Fax:    (928) 445-5980
mdkpc@cableone.net
Attorneys for Plaintiffs

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| ALLEN DAVID TAYLOR and JEANETTE TAYLOR, husband and wife, | Case No. CV 2011-004271 |
| Plaintiffs, | **AFFIDAVIT OF SERVICE BY MAIL** |
| v. | |
| ADESA PHOENIX, LLC, a foreign LLC; ADESA, INC., a Delaware corporation; KAR AUCTION SERVICES, INC., a Delaware corporation; ABC CORPORATIONS I-X; XYZ PARTNERSHIPS I-X; JOHN DOES I-X; JANE DOES I-X, | |
| Defendants. | |

STATE OF ARIZONA      )
                                        ) ss
County of Yavapai        )

I, Mark W. Drutz, on my oath depose and say that:

1.      I am Plaintiffs Allen David Taylor's and Jeanette Taylor's attorney.

2.      Defendant KAR Auction Services, Inc.'s Statutory Agent is known to be located outside the State of Arizona.

3.      One copy of the Summons, Complaint and Certificate of No Compulsory Arbitration were mailed Certified Mail, Return Receipt Requested on March 2, 2011 to the Statutory Agent's address in Delaware.

4.      The Summons, Complaint and Certificate of No Compulsory Arbitration were in fact received by Defendant KAR Auction Services' Statutory Agent, a copy of the Return Receipt is attached hereto as Exhibit "1".

5.      The Defendant KAR Auction Services' Statutory Agent received the pleadings on March 7, 2011 and I received the Return Receipt on March 8, 2011.

DATED this _15th_ day of March, 2011.

_Mark W. Drutz_
Mark W. Drutz

Subscribed, sworn to and acknowledged before me this 15th day of March, 2011.

_Karen B Crile_
Notary Public

My Commission Expires:



OFFICIAL SEAL
KAREN B. CRILE
Notary Public - State of Arizona
YAVAPAI COUNTY
My Comm. Expires Jan. 3, 2014

2

SENDER: COMPLETE THIS SECTION

Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
Print your name and address on the reverse
so that we can return the card to you.
Attach this card to the back of the mailpiece,
or on the front if space permits.

Article Addressed to:

National Registered Agents, Inc.
160 Greentree Drive
Suite 101
Dover, DE 19904

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X _Frances Burns_    ☐ Agent
                     ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
Frances Burns 8/7111

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☒ Certified Mail      ☐ Express Mail
☐ Registered          ☐ Return Receipt for Merchandise
☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

Article Number
(Transfer from service label)

91 7108 2133 3932 8732 6516

S Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540

---

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

MUSGROVE, DRUTZ & KACK, P.C.

MAR - 8 2011

• Sender: Please print your name, address, and ZIP+4 in this box •

Mark W Drutz
Musgrove, Drutz & Kael, PC
PO Box 2720
Prescott, AZ 86302-2720

Taylor 109621

# EXHIBIT 8

Mark W. Drutz, #006772
Sharon Sargent-Flack, #021590
**MUSGROVE, DRUTZ & KACK, P.C.**
1135 Iron Springs Road
Post Office Box 2720
Prescott, AZ  86302
Phone: (928) 445-5935
Fax:    (928) 445-5980
mdkpc@cableone.net
Attorneys for Plaintiffs

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| ALLEN DAVID TAYLOR and JEANETTE TAYLOR, husband and wife, | Case No. CV 2011-004271 |
| Plaintiffs, | **RULE 41(a) NOTICE OF DISMISSAL WITHOUT PREJUDICE** |
| v. | (The Honorable Judge Mangum) |
| ADESA PHOENIX, LLC, a foreign LLC; ADESA, INC., a Delaware corporation; KAR AUCTION SERVICES, INC., a Delaware corporation; ABC CORPORATIONS I-X; XYZ PARTNERSHIPS I-X; JOHN DOES I-X; JANE DOES I-X, | |
| Defendants. | |

Pursuant to Rule 41(a)(1) of the Arizona Rules of Civil Procedure, Plaintiffs give notice that they are voluntarily dismissing Defendant KAR Auction Services, Inc. without prejudice.  No answer having been filed by Defendant KAR, all parties shall bear their own attorneys' fees and costs.  No order of the Court is necessary or requested as the dismissal without prejudice is effective on filing, under Rule 41(a)(1).

/ / /

1    DATED this 28th day of March, 2011.

2                                           MUSGROVE, DRUTZ & KACK, P.C.

3

4

5                                           By ___/s/ Mark W. Drutz_____
                                                 Mark W. Drutz
6                                                Sharon Sargent-Flack
                                                 Attorneys for Plaintiffs
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    2

## Filing Details

**Filing ID:** 834640 **Authorized Date:** 3/28/2011 9:58:46 AM

| | |
|---|---|
| **Filer's Information** | Victoria Joan Azbill<br>**Email:** vazbill2@cableone.net |
| **Firm Information** | Musgrove, Drutz & Kack, P.C.<br>1135 Iron Springs Road<br>Prescott, AZ 86302<br>**Phone:** 928 445-5935 |
| **Case Number** | CV2011-004271 |
| **Case Summary** | Taylor Vs. Taylor, Et.Al. / Mangum, J |
| **Attorney Information** | **Bar No.:** 006772 - **State:** AZ - **Email:** mdkpc@cableon.net |
| **Filing Fee** | $0 |

## Documents Attached to Filing

| Document Title | Document Type |
|---|---|
| Rule 41(a) Notice of Dismissal Without Prejudice | Notice Of Dismissal |

If you have any questions about your filing, please contact us:

| **Clerk of Court Address** | **eFiling Support Phone** |
|---|---|
| 201 West Jefferson<br>Phoenix, Arizona 85003 | 602-506-2565 |

### Clerk of Court Web Site
http://clerkofcourt.maricopa.gov

# EXHIBIT 9

# MUSGROVE, DRUTZ & KACK, P.C.
### ATTORNEYS AT LAW

JAMES B. MUSGROVE
MARK W. DRUTZ
THOMAS P. KACK
SHARON SARGENT-FLACK
P. ERIC ENGLISH
BRIAN G. PURSELL

POST OFFICE BOX 2720
PRESCOTT, ARIZONA 86302-2720

1135 IRON SPRINGS ROAD
PRESCOTT, ARIZONA 86305

TELEPHONE
(928) 445-5935
(928) 445-5980 (FAX)
(928) 775-9565

GRANT K. McGREGOR (1959-2005)

September 21, 2010

File No. 10962-1

Ms. Doris Robinson
Sr. Claims Processor
Gallagher Bassett Services, Inc.
13801 Riverport Drive, Suite 501
Maryland Heights, MO 63043

Re:    Our Clients:    Allen David Taylor and Jeanette Taylor, husband and wife
        Your Insured:    KAR Services/ADESA
        Claim Number:    003626-000854-AB-01
        Date of Loss:    December 16, 2009

Dear Ms. Robinson:

As you are aware, our office represents Allen David Taylor (d.o.b. 12/16/46) and Jeanette Taylor, husband and wife, in connection with injuries and damages they sustained as result of the subject automobile/pedestrian accident caused by an employee of your insured, ADESA Auto Auction, on December 16, 2009. We would like to make a reasonable effort to resolve this matter, and therefore we are submitting the following settlement proposal.[1]

The background of the subject accident and our clients' claims against your insured are as follows:

## LIABILITY

On December 16, 2009, at approximately 9:00 a.m. Mr. Taylor was on his way to the ADESA auction building located in Chandler, Arizona. Mr. Taylor was approximately six (6) to eight (8) feet in the crosswalk walking toward the building when he was suddenly struck by

---

[1] This letter is an offer to compromise/settle a liability claim for valuable consideration and, as such, *shall not* be introduced or considered to be admissible into evidence in any court or arbitration proceeding. Under Rule 408, Ariz. R. Evid., "[e]vidence of 1) furnishing or offering, or 2) accepting or offering to accept, a valuable consideration in compromising or attempting to compromise a claim that is disputed as to validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.



Ms. Doris Robinson
Sr. Claims Processor
Gallagher Bassett Services, Inc.
September 21, 2010
Page 2


what appeared to be an SUV that was being operated by one of ADESA's employees.  The impact to Mr. Taylor's left leg was so forceful he lost his balance and  his left leg buckled under the bumper.  Mr. Taylor screamed for the driver to stop.  One of your other employees, Sandi, saw the incident and was screaming at the driver to stop.  When the vehicle stopped, Mr. Taylor was able to get out from under the front of the car.  He witnessed Sandi talking to the female driver, who apparently only spoke Spanish.  Mr. Taylor made his way inside the building to report the incident.

Mr. Taylor believes that he spoke with Security and a police officer about the incident, but he was never given a copy of the police report.

A copy of the statement prepared by Mr. Taylor is attached hereto as Exhibit "1".

We believe that ADESA's employee violated at least two statutes on the day in question. First, he violated A.R.S. § 28-794, which provides in pertinent part as follows:

Notwithstanding the provisions of this chapter every driver of a vehicle shall:

1. Exercise due care to avoid colliding with any pedestrian on any roadway.

2. Give warning by sounding the horn when necessary.

3. Exercise proper precaution on observing a child or a confused or incapacitated person on the roadway.

Under the pertinent provision of this statute, ADESA's employee was required to exercise due care to avoid hitting Mr. Taylor.   She did not exercise due care in operating ADESA's vehicle as she did at the time in question to avoid hitting Mr. Taylor, who was in a designated crosswalk and therefore she violated this statute.

ADESA's employee also violated A.R.S. § 28-792(A) in causing the accident, which provides:

Except as provided in § 28-793, subsection B, if traffic control signals are not in place or are not in operation, the driver of a vehicle shall yield the right-of-way, slowing down or stopping if need be in order to yield, to a pedestrian crossing the roadway within a crosswalk when the pedestrian is on the half of the roadway on

Ms. Doris Robinson
Sr. Claims Processor
Gallagher Bassett Services, Inc.
September 21, 2010
Page 3

which the vehicle is traveling or when the pedestrian is approaching so closely
from the opposite half of the roadway as to be in danger.  A pedestrian shall not
suddenly leave any curb or other place of safety and walk or run into the path of a
vehicle that is so close that it is impossible for the driver to yield.

This statute required ADESA's employee to yield the right-of-way to Mr. Taylor who was
**crossing the roadway within a crosswalk on the half of the roadway on which ADESA's
employee was traveling.**  Additionally, Mr. Taylor did not suddenly leave the curb and walk into
the path of the vehicle when it was so close that it was impossible for the driver to yield.

ADESA's employee's violation of these statutes constitutes *negligence per se*.  This is
evident from the Arizona Supreme Court's decision in <u>Young Candy & Tobacco Co. v. Montoya</u>,
91 Ariz. 363, 372 P.2d 703 (1962), wherein our Supreme Court held that a motorist's failure to
comply with a state statute pertaining to the operation of motor vehicles constitutes negligence
per se.  This is also in accord with Negligence Instruction 1, entitled "Violation Of Statute
(Negligence Per Se)," which is set forth in the fourth edition of the Revised Arizona Jury
Instructions (Civil).

Mr. Taylor sustained  multiple injuries as a result of this accident for which he has
undergone medical treatment, pain and suffering, anguish and anxiety.  Mr. Taylor has been
advised that he will eventually have to undergo a total left knee replacement.

## <u>INJURIES</u>

After reporting the incident, Mr. Taylor went to urgent care at Desert Foothills Medical
Center where he was evaluated by Martin S. Chattman, M.D.  The following history was
recorded:

Walking across crosswalk at Adessa Auto Auction.  Car hit him at 5 mph on [left]
hip & knee.  Held onto bumper until she stopped.  Security came and so did
police.  They iced him, pt. refused ambulance & came here.  Car was ... on top of
him.  Pt. states pain along [left] side from waist down - hip & knee worst.  Knee
was medially displaced according to patient. 8/10 for hip & knee on pain scale.

Examination revealed significant pain in Mr. Taylor's left buttock, decreased ROM with
significant medial swelling and extreme tenderness in his left knee, and pain with range of

Ms. Doris Robinson
Sr. Claims Processor
Gallagher Bassett Services, Inc.
September 21, 2010
Page 4

motion of his left ankle.  Dr. Chattman was of the opinion that Mr. Taylor was suffering from a
contusion to his left hip and left leg.

On the same date, December 16, 2009, Mr. Taylor underwent the recommended x-ray of
his lumbosacral spine, left hip, left knee and left ankle at SimonMed, pursuant to a referral from
Dr. Chattman.  David Kassen, M.D. was of the impression that the x-rays revealed mild
degenerative changes in Mr. Taylor's left knee and lumbar spine.

On January 6, 2010, Mr. Taylor underwent the recommended MRI scan of his lower left
extremity at SimonMed.  According to Penny Krich, M.D., the scan revealed very early arthrosis
of the hip joint.

On January 13, 2010, Mr. Taylor underwent the recommended MRI scan of his left leg at
SimonMed, pursuant to a referral from Dr. Chattman.  According to Dr. Krich, the scan revealed:

1.    Findings compatible with a chronic complete or near complete anterior cruciate
      ligament tear.
2.    Complex displaced tearing of the medial meniscus.
3.    Nondisplaced, obliquely oriented tear involving the posterior horn of the lateral
      meniscus where high signal extends to the inferior articular surface.
4.    Tricompartmental degenerative osteoarthrosis.  There are changes of Grade III and
      Grade IV chondromalacia within the medial compartment.  Grade II changes
      predominate within the lateral compartment.  Grade I and Grade II changes are
      noted within the patellofemoral compartment.  Evidence of patellar maltracking.
5.    Small joint effusion and Baker's cyst with evidence of synovitis.

On the same date, January 13, 2010, Dr. Chattman's office referred Mr. Taylor to Dr.
Gerald Yacobucci for evaluation.

On January 21, 2010, Mr. Taylor was seen by Gerald N. Yacobucci, M.D. at The
Orthopedic Clinic ("TOCA"), pursuant to a referral from Dr. Chattman.  Dr. Yacobucci recorded
the following history:

This is a 62-year-old male who presents to the office today for evaluation of an
injury to his left knee and his left lower back as a result of an injury he sustained
in a car-pedestrian incident.  He was apparently in a crosswalk and was struck on
the outer aspect of his leg by a car sustaining the immediate onset of low back, left

Ms. Doris Robinson
Sr. Claims Processor
Gallagher Bassett Services, Inc.
September 21, 2010
Page 5

hip, and left knee pain. ... He has had persistent complaints over the last month
with minimal improvement using rest, cold, heat, and compression wrap. His
symptoms are pain at an 8/10 on a VAS scale and associated numbness, weakness,
swelling, loss of motion, and joint popping. The patient has pain in the left low
back, left buttock, radiating down the leg to the lateral outer aspect of his left calf.
He is also complaining of primarily medial knee discomfort and swelling. The
patient has completed ultrasound evaluation of the abdomen and pelvis. The
report is available for my review. He has also completed MRI evaluation of the
left knee. The films and report are available for my review.

Examination revealed tenderness at the lumbosacral junction on the left, tenderness in the sciatic
notch with firm deep palpation, positive Lachman test on the left knee with moderate amount of
effusion and tenderness along the medial joint line. Dr. Yacobucci reviewed Mr. Taylor's x-rays
and MRI scan and opined that the findings were consistent with ACL rupture, medial meniscus
tear, and advanced medial compartment arthrosis. Mr. Taylor's left knee was prepped and
aspirated. Dr. Yacobucci recommended that Mr. Taylor undergo a course of physical therapy for
his lumbosacral spine and left knee pain. Dr. Yacobucci also recommended that Mr. Taylor
undergo an MRI scan of his lumbosacral spine to rule out the possibility of acute injury.

On February 2, 2010, Mr. Taylor was evaluated by Drew Giardina, PT, SCS, STC/L,
CSCS at Total Sports Therapy, pursuant to a referral by Dr. Yacobucci. Mr. Giardina recorded
the following history:

This 63 year old male presents today for complaining of L. knee pain. Dave states
that on 12/16/09 while walking through a cross walk he wa[s] hit by a car. His
left knee went under the bumper and created L. knee pain and back pain. He
ultimately had a MRI that shows 2 meniscus tears, an ACL tear and OA in the L.
knee. Dr. Yaco suggested a month of therapy and a brace to see if they can avoid
a TKA, but that ultimately he will need a knee replacement. Dave states that he is
very active and prior to the accident he did not have problems w/ his knee or back.
Dr. Yaco drained the knee at last appt. and that has helped.

Mr. Giardina performed an examination and assessed Mr. Taylor's condition as follows:

... Dave has a badly degenerated knee w/ some acute trauma. I will be trying to
progress the motion and strength as tolerated to dec. the stress during fxn and gait.
I told him that w/ therapy and brace that after a month if the knee is not any better

Ms. Doris Robinson
Sr. Claims Processor
Gallagher Bassett Services, Inc.
September 21, 2010
Page 6

he should look into seeing the Dr. that Dr. Yaco recommended as w/o the ACL
the knee will usually get much worse rather quickly. At this point prognosis is
only fair considering the OA present.

Mr. Giardina recommended a course of treatment consisting of manual therapy, E-stim and
therapeutic exercise.

On February 4, 2010, Mr. Taylor underwent the recommended MRI scan of his lumbar
spine at SimonMed. According to David Lefkowitz, M.D., the scan revealed mild to moderate
disc degeneration.

From February 5, 2010 through February 11, 2010, Mr. Taylor underwent the
recommended physical therapy at Total Sports Therapy on four (4) occasions.

On February 15, 2010, Mr. Taylor was seen by Christopher W. Huston, M.D. at TOCA,
pursuant to a referral from Dr. Yacobucci. Dr. Huston recorded the following history:

Mr. Taylor is a 63-year-old-male who presents at the request of Dr. Yacobucci for
consultation regarding back pain. David reports onset of symptoms on
12/06/2009 [sic]. He was at the ADSSA [sic] auto auction. He was crossing a
crosswalk when he was alledgedly [sic] hit by another car going 10 mph. He was
able to grab on the grill as he went underneath the car and it hit him on the left
side. He had immediate onset of back pain, pain in his left buttock area, left knee
and ankle. ... He saw Dr. Yacobucci for his knee, who recommended he follow up
with me for his back. The pain is a 6 to 8/10 intensity pain, of a throbbing,
tingling, aching, sharp, pulling, burning, shooting quality.

Examination revealed pain on trunk flexion and extension in the lumbar and buttock regions,
tenderness to palpation of the paraspinals bony level L3 and at L5-S1 spinous process, tenderness
to palpation in the left upper buttock, knee pain, guarded internal hip rotation and unable to be
performed due to knee pain. Mr. Taylor was unable to do voluntary sustained hip flexion due to
pain. Dr. Huston reviewed Mr. Taylor's x-rays and MRI scans and was of the opinion that Mr.
Taylor was suffering from subacute mechanical back pain after being hit by a car with a general
diagnosis of a lumbar strain, contusion and lumbar disc disease at L4-5, L5-S1 with an annular
fissure in the L5 disc. Dr. Huston recommended that Mr. Taylor undergo a course of physical
therapy and recommended to Mr. Taylor that he have his knee treated before proceeding with any

Ms. Doris Robinson
Sr. Claims Processor
Gallagher Bassett Services, Inc.
September 21, 2010
Page 7

interventional procedures in regards to his lumbar spine if he continued to have persistent low back pain.

From February 16, 2010 through February 25, 2010, Mr. Taylor underwent the recommended physical therapy treatments at Total Sports Therapy on five (5) occasions. During the February 25, 2010 visit Mr. Taylor reported that he had to be careful when rotating his knee or it would give out on him.

On February 25, 2010, Mr. Taylor returned to TOCA for a follow-up with Dr. Yacobucci for his left knee. It was reported that Mr. Taylor had completed one month of therapy. Dr. Yacobucci recommended that Mr. Taylor continue with therapy and provided a prescription for a custom Count'R-Force derotation brace for his left knee. Dr. Yacobucci also spoke with Mr. Taylor about a consultation regarding the possibility of knee replacement.

From March 1, 2010 through March 3, 2010, Mr. Taylor underwent the recommended physical therapy at Total Sports Therapy on three (3) occasions.

On March 4, 2010, Mr. Taylor was seen by Sherwood K. Duhon, M.D. at TOCA, pursuant to a referral from Dr. Yacobucci. Dr. Duhon recorded the following history:

> David is an internal referral from Dr. Yacobucci. He is a 63-year-old gentleman that presents today with the complaint of left knee pain. The patient states that he has tried multiple treatments in the past including injections. He has currently been in a therapy program for the past two months. He reports having three or more MRIs on the left knee. He continues to experience discomfort and pain. He rates his pain a 3-9/10 on a VAS scale. He also experiences symptoms such as popping, catching, locking, grinding, swelling, stiffness, instability, weakness, tingling, and pain at night. His problem is aggravated by planting and turning and somewhat relieved with rest. He has tried a host of different conservative treatments. ...

Examination revealed tenderness over the medial joint line, minimal crepitus with motion, mildly palpable osteophytes and a positive Lachman test. Review of Mr. Taylor's x-rays showed mild to moderate degenerative changes throughout his left knee. Dr. Duhon was of the impression that Mr. Taylor was suffering from degenerative joint disease of the left knee and discussed treatment options with Mr. Taylor including a left total knee replacement.

Ms. Doris Robinson
Sr. Claims Processor
Gallagher Bassett Services, Inc.
September 21, 2010
Page 8

On March 5, 2010, Mr. Taylor underwent the recommended CT scan of his abdomen and pelvis at SimonMed, pursuant to a referral from Dr. Chattman. Due to the discomfort that Mr. Taylor was experiencing, he was unable to complete the examination. Dr. Krich was of the opinion that the scan revealed early arthrosis of the hip joint.

On March 8, 2010, Dr. Chattman's nurse spoke with Mr. Taylor, who advised her that he had just gotten the brace for his left knee, that he was continuing with physical therapy and that Dr. Yacobucci was recommending that he undergo a left knee replacement.

On March 11, 2010, Mr. Taylor was seen at TOCA by Matthew Cocking, PA-C, who recorded the following:

> The patient presents to the office today for evaluation of his left knee. He has the opportunity to obtain his custom unloader brace. He also has obtained a consultation with Dr. Duhon for a possible total joint arthroplasty. The patient is in favor of pursuing continued conservative care prior to having his joint replacement carried out.

Examination revealed medial joint line tenderness with minimal crepitus with passive range of motion, positive Lachman and positive McMurray sign. Mr. Cocking recommended that Mr. Taylor continue with physical therapy and that he continue using his knee brace.

From March 4, 2010 through March 25, 2010, Mr. Taylor underwent the recommended physical therapy at Total Sports Therapy on twelve (12) occasions.

On March 29, 2010, Mr. Taylor was seen by Dr. Chattman, who recorded that Mr. Taylor had fallen on March 26, 2010 and struck his right chest and right shoulder.[2] Mr. Taylor also reported that he had been in terrible pain since the December 16, 2009 accident.

From March 29, 2010 through April 14, 2010, Mr. Taylor underwent the recommended physical therapy at Total Sports Therapy on eight (8) occasions.

On April 16, 2010, Mr. Taylor returned to Dr. Chattman's office with complaints of severe right rib pain. Examination revealed that Mr. Taylor's right chest was very tender. Dr. Chattman ordered an x-ray of Mr. Taylor's chest and right ribs and a CT scan of Mr. Taylor's

---

[2]Mr. Taylor has advised that his left knee gave out, which caused him to fall.

Ms. Doris Robinson
Sr. Claims Processor
Gallagher Bassett Services, Inc.
September 21, 2010
Page 9


chest. Dr. Chattman was of the opinion that Mr. Taylor was suffering from a chest contusion and
placed Mr. Taylor in a rib belt. On this date, Mr. Taylor underwent an x-ray of his chest, which
according to David Kassen, M.D., revealed no acute cardiopulmonary changes.

On April 20, 2010, Mr. Taylor underwent the recommended MRI scan of his left shoulder
due to pain and limited mobility since the December 16, 2009 accident. He also underwent the
recommended CT scan of his chest. According to Dr. Krich, the MRI scan of his left shoulder
revealed:

1.    Nondisplaced degenerative-appearing tearing involving the inferior aspects of the
      labrum with a small paralabral cyst extending inferiorly from this area.
2.    Mild osteoarthritis of the acromioclavicular joint. Os acromiale. Type-II mildly
      anterolaterally downsloping acromion with a small subacromial spur contributes
      to impingement. Mild reactive thickening and fluid distention of the
      subacromial/subdeltoid bursa.
3.    Mild teninosis of the rotator cuff without evidence of a high-grade partial or full-
      thickness rotator cuff tear.

According to Cynthia Goralnik, M.D., the chest CT scan revealed no definite rib fractures.

On April 26, 2010, Mr. Taylor was seen by Dr. Chattman in a follow-up visit. Mr. Taylor
reported that his right ribs were still extremely painful and examination revealed that his right
chest was very tender.

On May 4, 2010, Mr. Taylor was evaluated by Matthew Seidel, M.D. for a second
opinion regarding his left knee. Dr. Seidel recorded a history, reviewed the x-rays and MRI
scans and performed an examination. Dr. Seidel set forth the following plan:

This 63-year-old male with a history of injury to the knee was [here] for
consultation regarding knee pain. Raidographs show underlying osteoarthritis of
the medial compartment and MRI shows meniscal tear and ACL tear. He is fairly
comfortable in the offloader brace which he wears. We had long discussion
regarding the indications for knee replacement. At this point I believe the patient
should continue nonoperative measures as long as he is comfortable. At some
point he may find that the brace and/or anti-inflammatories did not provide
enough relief and may return to discuss total knee replacement further at that time.
...

Ms. Doris Robinson
Sr. Claims Processor
Gallagher Bassett Services, Inc.
September 21, 2010
Page 10


On May 17, 2010, Mr. Taylor underwent the recommended physical therapy at Total Sports Therapy. He reported that he had missed his therapy due to the pain he was suffering from his right rib injury.

On May 20, 2010, Mr. Taylor returned to Dr. Yacobucci's office for a follow-up visit. Mr. Taylor reported that he was still experiencing medial knee discomfort, that he was using his knee brace with reasonably good results and that his associated symptoms were catching, popping, grinding, swelling, stiffness, instability and weakness in his left knee. Examination revealed mild varus alignment, tenderness along the medial joint line and atrophy of 1+. Dr. Yacobucci assessed Mr. Taylor's condition as degenerative joint disease and medial compartment overload syndrome. Dr. Yacobucci advised Mr. Taylor to continue using his knee brace and to return when his symptoms exacerbated again at which point they would consider a course of Visco supplementation therapy.

On August 2, 2010, undersigned counsel forwarded a letter to Dr. Yacobucci requesting that he set forth his professional medical opinions concerning the injury Mr. Taylor sustained to his left knee. On August 10, 2010, Dr. Yacobucci responded as follows:

I have had a chance to review, in detail, all the specifics included within the medical record summary, as well as the details of those records pertaining to Mr. Taylor's care at my office. Having done that, I am enclosing the following responses to your six specific questions located at the end of your letter.

Response #1: I am of the opinion, to a reasonable degree of medical probability, that the accident in which Mr. Taylor was involved on December 16, 2009 caused the left ACL rupture and medial meniscus tear.

Response #2: I am not of the opinion that the accident of 12/16/09 caused advanced medial compartment arthrosis to become symptomatic. I am of the opinion that the incident of 12/16/09 caused the injuries listed above (AC< rupture and medial meniscus tear) which, in turn, caused Mr. Taylor's left knee to become symptomatic (pain, swelling, and weakness). This necessitated the medical treatment that he incurred.

Response #3: As stated in Response #1, it is my opinion that the ACL rupture and medial meniscus tear did not predate the accident but, instead, were caused by

Ms. Doris Robinson
Sr. Claims Processor
Gallagher Bassett Services, Inc.
September 21, 2010
Page 11

the accident of 12/16/09. These, therefore, necessitated the required medical
treatment which he incurred directly as a result of the incident of 12/16/09.

Response #4:  As a result of the ACL rupture and medial meniscus tear, it is my
opinion that Mr. Taylor would ultimately require knee replacement somewhat
earlier than if these injuries had not occurred. Due to the loss of meniscal
function (cushioning of the medial compartment) and the loss of ACL function
(stability of the entire knee joint), it is apparent that Mr. Taylor's left knee would
undergo degenerative change on a more rapid timeline than would, otherwise,
occur. In my estimation, the need for knee replacement would probably be
accelerated to a point roughly five years earlier than had these injuries not
occurred. The cost of knee replacement surgery (ballpark estimate) is $30,000,
inclusive of the surgical fee, the facility fee, the anesthesia fee, and the physical
therapy fee.[3]

Response #5:  I do believe that the course of medical treatment for the injuries
suffered in the motor vehicle accident of 12/16/09 was medically necessary and
causally related to the accident.

Response #6: I do believe that Mr. Taylor has a ratable impairment attributable to
the injuries sustained in the accident under the Sixth Edition of the AMA Guides
to Permanent Impairment of Function. The impairment rating is as follows: using
the knee regional grid for lower extremity impairments on Page 509, the
diagnostic criteria for meniscal injury is noted to produce a 2% impairment rating
for meniscal tear. In addition, on the following page, the diagnostic criteria for
cruciate ligament injury, mild laxity, produces a default impairment rating of 10%.
Using the combined values chart on Page 604, Appendix A, a total lower
extremity rating of 11% is assigned.

Enclosed as Exhibit "2" is a copy of Dr. Yacobucci's August 10, 2010 letter.

Mr. Taylor is continuing to receive medical treatment for his accident-related injuries. He
continues to wear his knee brace and works out at the Freedom Fitness Center with a personal
trainer. He has resigned himself to the fact that in the future he will have to undergo the left knee

---

[3]Based upon our prior experience, we believe that Dr. Yacobucci's estimate as to the cost
of future surgery is exceedingly conservative and the cost would be closer to $70,000.

Ms. Doris Robinson
Sr. Claims Processor
Gallagher Bassett Services, Inc.
September 21, 2010
Page 12

replacement surgery.  Accordingly, we are enclosing copies of the following medical records for
your review:

| | |
|---|---|
| Desert Foothills Medical Center | Exhibit "3" |
| SimonMed | Exhibit "4" |
| The Orthopedic Clinic Association | Exhibit "5" |
| Total Sports Therapy | Exhibit "6" |
| Mallin & Seidel Orthopaedic Oncology | Exhibit "7" |

## MEDICAL EXPENSES

As a direct and proximate result of ADESA's employee's negligence in causing the
accident on December 16, 2009, Mr. Taylor has incurred the following medical expenses:

| | |
|---|---|
| Desert Foothills Medical Center (Exhibit "8") | $  1,827.00 |
| SimonMed (Exhibit "9") | 4,006.00 |
| The Orthopedic Clinic Association (Exhibit "10") | 4,108.84 |
| Total Sports Therapy (Exhibit "11") | 2,275.00 |
| Mallin & Seidel Orthopaedic (Exhibit "12") | 416.00 |
| **Total Medical Expenses:** | **$ 12,632.84** |

Due to his knee injury, Mr. Taylor has incurred expenses in the sum of $855.00 at
Freedom Fitness for the services of a personal trainer to help him with strengthening exercises.

## EVALUATION

Mr. Taylor's injuries and damages were caused by ADESA's employee's negligence.  The
enclosed medical records document Mr. Taylor's injuries and misery were directly and proximately
caused by the accident.  His injuries to his left side, including his left shoulder, left buttock, left hip,
left knee and left ankle, have caused him to suffer pain and symptomatology on a daily basis and
have required him to wear an unloader brace on his left knee.  Enclosed as Exhibit "13" are color

Ms. Doris Robinson
Sr. Claims Processor
Gallagher Bassett Services, Inc.
September 21, 2010
Page 13


photographs of the unloader brace that Mr. Taylor must now wear on a daily basis. His treatment was very conservative and his medical expenses could have been much higher.

Prior to the accident, Mr. Taylor was very active and enjoyed participating in weekend sports and riding horses. The accident has changed all of that. Mr. Taylor must be very careful how he moves his left knee as it will give out causing him to fall. He is attempting to use conservative treatments for his left knee, but is realistic about the fact that in the future he will need to undergo a total knee replacement. Until the time of the surgery, he will have to wear the unloader brace and suffer from weakness and pain in his left knee. There are risks and uncertainties associated with the invasive surgery. What Mr. Taylor does know is that he will be plagued with left knee issues for the rest of his life. Mr. Taylor has a present life expectancy of 16.45 years, according to the National Center for Health Statistics.[4]

Please note a few facts material to your evaluation. As you know, Arizona follows what is called the "eggshell" doctrine which provides that a defendant takes a plaintiff in the condition he finds him. This case is no exception. The x-rays and MRI scans revealed that Mr. Taylor has degenerative disc and joint disease in his spine and left knee. However, he was not actively seeking medical treatment for his left knee or spine prior to the accident on December 16, 2009. Moreover, Dr. Yacobucci has opined that the December 16, 2009 accident proximately caused the ACL rupture and medial meniscus tear in Mr. Taylor's left knee.

In the event we are not able to settle this matter and are required to proceed to trial, we will ask the Court to instruct the jury in accordance with RAJI (Civil) 4th Personal Injury Damages 2 with regards to Mr. Taylor's damages as follows:

**Pre-Existing Condition,**
**Unusually Susceptible Plaintiff**

Plaintiff is not entitled to compensation for any physical or emotional condition that pre-existed the fault of Defendant. However, if Plaintiff had any pre-existing physical or emotional condition that was aggravated or made worse by Defendant's fault, you must decide the full amount of money that will reasonably and fairly compensate Plaintiff for that aggravation or worsening.

---

[4]    *Vital Statistics of the United States*, 1987, Vol. II., mortality, Part A. Section 6--Life Tables, page 11, Table 6-3. Washington: Public Health Services, 1990. (DHHS Publication No. (PHS) 90-1101.)

Ms. Doris Robinson
Sr. Claims Processor
Gallagher Bassett Services, Inc.
September 21, 2010
Page 14

      You must decide the full amount of money that will reasonably and fairly compensate Plaintiff for all damages caused by Defendant, even if Plaintiff was more susceptible to injury than a normally healthy person would have been, and even if a normally healthy person would not have suffered similar injury.

RAJI (Civil) 4th Personal Injury Damages 2 (Exhibit "14" hereto).

      According to Dr. Yacobucci, the December 16, 2009 accident will require Mr. Taylor to undergo a total left knee replacement five (5) years earlier than if the accident had not occurred.

      Mr. and Mrs. Taylor are entitled to receive the full amount of money that will reasonably and fairly compensate them for the injuries to Mr. Taylor's left knee and back, both of which will undoubtedly require future medical treatment. Mr. and Mrs. Taylor will seek compensation for the following elements of damages proved by the evidence to have resulted from the fault of ADESA's employee on December 16, 2009:

(1)     The nature, extent, and duration of the injury.
(2)     The pain, discomfort, suffering, disability, disfigurement, anxiety already experienced, and reasonably probable to be experienced in the future as a result of the injury.
(3)     Reasonable expenses of necessary medical care, treatment, and services rendered, and reasonably probable to be incurred in the future.
                                   ***
(5)     Loss of love, care, affection, companionship, and other pleasures of the marital relationship.
(6)     Loss of enjoyment of life, that is, the participation in life's activities to the quality and extent normally enjoyed before the injury.

See Revised Arizona Jury Instruction (Civil) 4th Personal Injury Damages 1, attached hereto as Exhibit "15 ".

      We would like to resolve this matter if possible. However, in order to do so it is imperative that Mr. and Mrs. Taylor be adequately and fairly compensated consistent with the foregoing measure of damages. Mr. Taylor is clearly entitled to be compensated for his injuries, impairment, pain and suffering, anguish, loss of enjoyment of life's activities and past and future medical expenses related to the accident. Mrs. Taylor is clearly entitled to be compensated for her lost of

Ms. Doris Robinson
Sr. Claims Processor
Gallagher Bassett Services, Inc.
September 21, 2010
Page 15

consortium with Mr. Taylor due to his accident-related injuries.  See RAJI (Civil) 4th Personal Injury
Damages Instruction No. 1.

Based on the foregoing, Mr. and Mrs. Taylor have authorized our office to settle their claims
against your insured for the sum of $450,000.  With these terms in mind, our clients are willing to
settle all their claims against your insured in consideration of their execution of an appropriate
release of liability.  This offer will expire at 5:00 p.m. on October 5, 2010.

Sincerely,

MUSGROVE, DRUTZ & KACK, P.C.

By

Mark W. Drutz
Sharon Sargent-Flack

MWD/kbc
Enclosures
cc:    Mr. and Mrs. Taylor

**EXHIBIT 10**

1   Bradley W. Petersen (#019943)
    Amanda C. Sheridan (#027360)
2   docket@swlaw.com
    SNELL & WILMER L.L.P.
3   One Arizona Center
    400 E. Van Buren
4   Phoenix, AZ  85004-2202
    Telephone: (602) 382-6000
5   Attorneys for Defendants
       ADESA PHOENIX, LLC and ADESA, INC.
6

7                IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

8                    IN AND FOR THE COUNTY OF MARICOPA

9

10  ALLEN DAVID TAYLOR and
    JEANETTE TAYLOR, husband and wife,          No. CV2011-004271
11
                     Plaintiffs,               **NOTICE OF REMOVED ACTION**
12
    v.                                          (The Honorable Judge Mangum)
13
    ADESA PHOENIX, LLC, a foreign LLC;
14  ADESA, INC., a Delaware corporation;
    KAR AUCTION SERVICES, INC., a
15  Delaware corporation; ABC
    CORPORATIONS I-X; XYZ
16  PARTNERSHIPS I-X; JOHN DOES I-X;
    JANE DOES I-X,
17
                     Defendants.
18

19

20          Defendants Adesa Phoenix, LLC and Adesa, Inc., pursuant to 28 U.S.C. § 1446(d),

21  give notice of removal of this action from the Superior Court of Arizona, Maricopa

22  County to the United States District Court, District of Arizona.  A copy of the Notice to

23  the United States District Court, with attachments, is enclosed herewith.  Pursuant to 28

24  U.S.C. § 1446(d), this Court shall proceed no further with this action.

25

26

27

28

1   DATED this 28th day of March, 2011.

2                          SNELL & WILMER L.L.P.

3

4          By /s/ Amanda Sheridan

5             Bradley W. Petersen
              Amanda Sheridan
6             One Arizona Center
              400 E. Van Buren
7             Phoenix, AZ  85004-2202
              Attorneys for Defendants
8                ADESA PHOENIX, LLC and ADESA, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28